ANTHONY FUCCI *v.* MARY J. FUCCI

COTTER, C. J., LOISELLE, BOGDANSKI, LONGO and PETERS, Js.

Argued June 14—decision released September 18, 1979

*Sydney T. Schulman,* for the appellant (defendant).

*Stephen E. Ronai,* with whom, on the brief, was *John M. Gesmonde,* for the appellee (plaintiff).

LONGO, J. This is an appeal from the judgment rendered by a state trial referee who entered a decree dissolving the marriage of the plaintiff Anthony Fucci and the defendant Mary J. Fucci. The parties were in agreement that the marriage had irretrievably broken down, as determined by the court. Accordingly, this appeal concerns the propriety of the various orders decreed in the judgment pertaining to the support for a minor child, alimony and the disposition of real and personal property and business assets.

The trial referee found the following pertinent facts: The plaintiff and the defendant intermarried on August 27, 1950. The parties had four children of whom only one, Mark, age 17, was a minor at the time of dissolution. At the date of the hearing, the plaintiff husband was forty-eight years old and the defendant wife was forty-seven years old. In 1967 the parties purchased a home which, at the time of the decree, was worth $60,000 and was encumbered with a $10,500 mortgage. The plaintiff left the family home in June, 1974, at which time the mar-

riage had irretrievably broken down, and in October, 1975, the plaintiff instituted the present action for a dissolution of the marriage.

In September, 1952, the plaintiff established a retail appliance business which he incorporated in 1966, transferring to the corporation various assets valued at $40,000. The referee found that those assets had belonged solely to the plaintiff and that the defendant contributed no assets to the corporation. Nineteen shares of stock were issued to the plaintiff and one share to the defendant. From 1953 until 1966, the defendant worked for one or two hours per day at the appliance store, thus enabling the plaintiff to make service calls. The plaintiff's remuneration from the business for his investment of time, skill, responsibility and capital had been poor and could be described as minimal. Because of the lack of goodwill, the low rate of return and the weak financial history of the business, the court found that at the time of the dissolution of the marriage hearing in 1977, the fair market value of the business was $30,000.

Following the hearing, the court, concluding that the marriage had broken down irretrievably, ordered custody of the minor son, Mark, to the defendant with the right of reasonable visitation to the plaintiff who was ordered to pay to the defendant the sum of fifty dollars weekly for Mark's support. No periodic alimony payments were ordered to the defendant because the court found that the defendant had sufficient income from her employment as an executive secretary earning an annual salary of $8320 in 1977, in addition to receiving $2600 per year in child support from the plaintiff. As to the real estate and other assets, the referee made the fol-

lowing orders: The jointly owned home of the parties, with all furniture and furnishings, was to be sold and the net proceeds of the sale, after payment of certain bills and home installment payments made by the plaintiff, were to be divided equally; the defendant should deliver to the plaintiff her one share of the capital stock of Milford Appliances, Inc., for which the plaintiff was to pay $1000; the parties should share equally in their jointly owned Series E Savings Bonds and shares of stock in Ambix Corporation; and the parties should share equally in all tax refunds up to and including 1976. The court denied the defendant's request for an allowance of counsel fees, stating that she would have ample financial means to pay a reasonable fee to her attorney. From the judgment rendered, the defendant has appealed to this court.

The defendant has made a broadside attack upon the finding of the trial court. As we have stated innumerable times in the past, this practice tends to camouflage the issues on appeal and is looked upon with disfavor by this court. We have sifted through the record and briefs of the parties, which contain extended appendices detailing the testimony elicited at the hearing in this case, and have analyzed the defendant's draft finding in relation to the trial court's finding, and conclude that the finding is not subject to correction. We have determined moreover that the trial court did not tread even remotely upon the ground of indiscretion in deciding the issues involved in this dispute, and shall discuss those claims which appear to focus most clearly on the defendant's assignments of error.

We first consider the defendant's claim that the court did not consider sufficient facts to permit a

proper determination as to alimony, support and assignment of the parties' marriage property consistent with all of the criteria set forth in General Statutes §§ 46b-81[1] and 46b-82.[2] Section 46b-81 provides in pertinent part that at the time of entering a decree dissolving a marriage, the court may assign to either the husband or the wife all or any part of the estate of the other, or may order the sale of the real property. The statute provides that in fixing the value and nature of the property so assigned, the court shall consider certain enumerated criteria, including the contribution of each of the parties in

[1] "[General Statutes] Sec. 46b-81. (Formerly Sec. 46-51). ASSIGNMENT OF PROPERTY AND TRANSFER OF TITLE. (a) At the time of entering a decree annulling or dissolving a marriage or for legal separation pursuant to a complaint under section 46b-45, the superior court may assign to either the husband or wife all or any part of the estate of the other. The court may pass title to real property to either party or to a third person or may order the sale of such real property, without any act by either the husband or the wife, when in the judgment of the court it is the proper mode to carry the decree into effect.

(b) A conveyance made pursuant to the decree shall vest title in the purchaser, and shall bind all persons entitled to life estates and remainder interests in the same manner as a sale ordered by the court pursuant to the provisions of section 52-500. When the decree is recorded on the land records in the town where the real property is situated, it shall effect the transfer of the title of such real property as if it were a deed of the party or parties.

(c) In fixing the nature and value of the property, if any, to be assigned, the court, after hearing the witnesses, if any, of each party, except as provided in subsection (a) of section 46b-51, shall consider the length of the marriage, the causes for the annulment, dissolution of the marriage or legal separation, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties and the opportunity of each for future acquisition of capital assets and income. The court shall also consider the contribution of each of the parties in the acquisition, preservation or appreciation in value of their respective estates."

[2] "[General Statutes] Sec. 46b-82. (Formerly Sec. 46-52). ALIMONY. At the time of entering the decree, the superior court may order either of the parties to pay alimony to the other, in addition to or in lieu of an award pursuant to section 46b-81. The order may

the acquisition, preservation or appreciation in value of their respective estates. Section 46b-82 provides that the court, in addition to or in lieu of an award pursuant to § 46b-81, supra, may order either of the parties to pay alimony to the other, after consideration of the cause of the dissolution and the criteria set forth in the statute.

The defendant admits that the court considered, as required by the statutes, the criteria of length of the marriage, causes for dissolution, age, occupation, amount and sources of income, current vocational skills of the parties, employability of the defendant, her estate and the opportunity of each for future acquisitions of assets and income. The defendant argues, however, that the court did not consider in its findings, the criteria of the parties' health, station in life, vocational skills or employability of the plaintiff, other than what he did in his business, or the specific liabilities and needs of the parties. See *Thomas* v. *Thomas,* 159 Conn. 477, 271 A.2d 62. We find no merit to the defendant's claim. The referee had before him the financial affidavits of both parties which indicated their assets, liabilities and sources of income. No claims were made about, nor does the record contain any reference to, the parties' condition of health, but the court was in

direct that security be given therefor on such terms as the court may deem desirable. In determining whether alimony shall be awarded, and the duration and amount of the award, the court shall hear the witnesses, if any, of each party, except as provided in subsection (a) of section 46b-51, shall consider the length of the marriage, the causes for the annulment, dissolution of the marriage or legal separation, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate and needs of each of the parties and the award, if any, which the court may make pursuant to section 46b-81, and, in the case of a parent to whom the custody of minor children has been awarded, the desirability of such parent's securing employment."

a position to observe their physical condition. Both parties were employed full time, and no duty devolved upon the court to inquire as to the health of the parties in the absence of circumstances indicating that an inquiry was warranted. Their condition of health did not appear to be a relevant factor requiring a finding.

The defendant's claim that the court did not consider in its finding the plaintiff's vocational skills or employability other than what he did in his business is also without merit and requires scant comment. The record clearly indicates that the plaintiff operated his retail business for approximately twenty-five years and serviced the appliances he sold, earning an average income of $12,180 from 1971 to 1976. There was no evidence to the effect that the plaintiff was incapable of operating his business, and the court was not required to accept the defendant's suggestion that the plaintiff should liquidate his appliance business and seek other employment.

The critical claim of the defendant's appeal as reflected in the record and briefs of the parties appears to be the defendant's dissatisfaction with the referee's failure to recognize and consider her contribution to the establishment and operation of the appliance business conducted by the plaintiff. The defendant argues that her involvement in the business to the extent of the time she worked in the store, together with her maintenance of the family home and care of the children, entitled her to an assignment of one-half of the value of the business.

We have stated in many decisions of this court that trial courts have a distinct advantage over an appellate court in dealing with domestic relations, where all of the surrounding circumstances and the

appearance and attitude of the parties are so significant. *Lee* v. *Lee,* 174 Conn. 5, 381 A.2d 529; *Ayers* v. *Ayers,* 172 Conn. 316, 321, 374 A.2d 233; *LaBella* v. *LaBella,* 134 Conn. 312, 318, 57 A.2d 627. It is also well settled that "[t]he trial court's decision as to the type and amount of property assigned or alimony awarded in an action for divorce or dissolution of a marriage is based upon the circumstances of the parties to the action and is within the sound discretion of the trial court, taking into account the . . . criteria in [former] §§ 46-51 and 46-52 of the General Statutes [now §§ 46b-81 and 46b-82, respectively]." *Chambliss* v. *Chambliss,* 171 Conn. 278, 279, 370 A.2d 924. In determining whether the trial court abused its discretion "the ultimate issue is whether the court could reasonably conclude as it did." *Aguire* v. *Aguire,* 171 Conn. 312, 314, 370 A.2d 948. We have, moreover, attempted to summarize the principles which control our review of domestic relations appeals; see *Jacobsen* v. *Jacobsen,* 177 Conn. 259, 262–63, 413 A.2d 854; and shall apply those principles to the following discussion.

As to the appliance business, on the basis of the testimony of the parties' expert appraisal witnesses, the court found that a proper method for valuing such a small closely held corporation would be to subtract the amount of business liabilities from the value of the assets, and to add thereto a sum representing goodwill. The court determined that the stockholder equity was approximately $43,000. The court found, however, that the business was not saleable as a going concern due to the weak financial history of the business, except in a forced sale where the inventory would be purchased at below cost; that the close proximity of several large discount

stores limited large profits; that despite the twenty-five year history of the business, the corporation had no goodwill; that much of the trade depended on the continued participation of the plaintiff in the business; and finally that due to the lack of goodwill and the weak financial history of the business, the fair market value of the business was $30,000. More significantly, the court found that no assets were contributed to the business by the defendant; that the assets used to undertake the venture were supplied totally by the plaintiff; that the plaintiff effectuated all of the major sales of appliances and that the plaintiff negotiated the major distributorship contracts for his appliances. In relation to the family residence, the court found the property to be worth approximately $60,000, less an outstanding mortgage balance of $10,500. The court considered that although the defendant resided in the family home with her two sons and her mother, she had little actual need for the large nine-room house as, in the immediate future, her sons, one of whom was in college and the other of whom was seventeen, would be leaving home. The defendant argues, on the basis of the above findings, that the court should have awarded to her a one-half interest in the appliance business.

The judicial standards of review which have developed pertaining to awards of alimony that we have referred to above are equally applicable to assignments of property. *DiPalma* v. *Wiesen,* 163 Conn. 293, 298, 303 A.2d 709; see *Jacobsen* v. *Jacobsen,* supra; *Pasquariello* v. *Pasquariello,* 168 Conn. 579, 584, 362 A.2d 835. The court's finding is extensive, and fairly and accurately takes into account the criteria prescribed in General Statutes § 46b-81 in relation to the division of the family residence and the

assignment of the appliance business to the plaintiff. In large part, the defendant's position in relation to the disposition of the appliance business centers on the argument that the trial court should have believed her accountant-witness rather than the accountant who testified for the plaintiff in relation to the method of valuation and marketability of the business. The question of credibility of the witnesses and of the weight to be accorded the evidence is, of course, committed to the discretion of the trial court. The distribution scheme adopted by the trial court reflects its view that an equitable disposition of the parties' estate dictated that the business, valued at $30,000, should be awarded to the plaintiff while a one-half interest in the proceeds of the house, valued at $60,000 less the $10,500 balance due on the mortgage, should go to the defendant. We cannot say that the court abused its discretion in the distribution of the assets of the parties as indicated by the court's awards. More particularly, the court's distribution of the marital estate properly took into consideration the contribution of each party in the acquisition and preservation of the parties' estate, as required by General Statutes § 46b-81.

The defendant's remaining assignments do not present questions distinct from those claims which we have already discussed. In each, the defendant asks that this court retry the case to alleviate her dissatisfaction with the judgment of the trial court. As we have indicated, however, we find no abuse of discretion in the trial court's judgment as to the distribution of assets following the dissolution of the parties' marriage.

There is no error.

In this opinion the other judges concurred.